# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TROY TRIPLETT,                                    Case No. 1:14-cv-729
      Plaintiff,                              Dlott, J.
                                                  Litkovitz, M.J.
      vs.


COMMISSIONER OF                                   **REPORT AND**
SOCIAL SECURITY,                                  **RECOMMENDATION**
      Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 13), and plaintiff's reply. (Doc. 16).

## I. Procedural Background

Plaintiff protectively filed an application for SSI in April 2011, alleging disability beginning July 19, 2010, due to knee problems, limited intelligence, depression/mood disorder, high cholesterol and pinched nerve in neck.[1] (Tr. 183). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory Kenyon. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On March 12, 2013, the ALJ issued a decision denying plaintiff's SSI application. (Tr. 12-25). Plaintiff's request for review by the

---

[1]Plaintiff had previously filed an application for SSI on January 24, 2008, which was denied at the administrative level. (Tr. 69).

Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)).   The claimant has the burden of proof at the first four steps

of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B.    The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since April 29, 2011, the application date (20 CFR 416.971 *et seq.*).

> 2. The [plaintiff] has the following severe impairments: degenerative joint disease of the right knee and left shoulder, degenerative disc disease of the lumbar and cervical spine, depression, and an anxiety disorder (20 CFR 416.920(c)).

> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) subject to the following limitations: (1) no crouching, crawling, or kneeling; (2) occasional stooping, balancing, and climbing of ramps and stairs; (3) no climbing of ladders, ropes, or scaffolds; (4) no work around hazards such as unprotected heights or dangerous machinery; (5) occasional overhead reaching with the left upper extremity; (6) standing or walking for no more than 30 minutes at a time; (7) limited to jobs in which he would be permitted to use a cane for assistance when ambulating; (8) limited to performing unskilled, simple, and repetitive tasks; (9) occasional contact with coworkers, supervisors, and the public; (10) no jobs involving rapid production pace work or strict production quotas; and (11) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work setting from one day to the next.

5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[2]

6. The [plaintiff] was born [in] . . . 1968 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has a marginal education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[3]

10.   The [plaintiff] has not been under a disability, as defined in the Social Security Act, since April 29, 2011, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14-25).

### C.   Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.   *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*,

---

[2]Plaintiff's past relevant work was as a dishwasher, an unskilled position typically performed at the medium level of exertion which plaintiff performed at the light level.   (Tr. 24).

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled sedentary occupations such as packer (350 jobs locally and 27,000 jobs nationally), assembler (300 jobs locally and 39,000 jobs nationally), inspector (200 jobs locally and 15,000 jobs nationally), and production helper (100 jobs locally and 36,000 jobs nationally).   (Tr. 25).

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff alleges that the ALJ erred by: (1) finding that plaintiff did not meet or equal the Listing of Impairments without considering plaintiff's need to use a hand-held assistive device; (2) failing to give controlling weight to the opinion of plaintiff's treating psychiatrist, Dr. Irfan Dahar, M.D.; and (3) failing to find that plaintiff's left knee condition is a severe impairment.[4] (Docs. 10, 16).

**1. The ALJ's severe impairment finding (Third assignment of error)**

Plaintiff alleges as his third assignment of error that the ALJ erred by failing to find his

---

[4]The Court will consider plaintiff's assignments of error in a different order than they are presented in the Statement of Errors.

left knee impairment is a "severe" impairment.   (Doc. 10 at 4-5).   Plaintiff alleges that he had

"significant orthopedic disease in his left knee throughout the relevant time period."   (*Id*. at 5).

Plaintiff contends the ALJ erred by not considering his left knee impairment beyond step two of

the sequential evaluation.   (*Id*.).

In response, the Commissioner alleges that the ALJ did not commit reversible error by

failing to include plaintiff's left knee impairment among plaintiff's severe impairments.   The

Commissioner alleges that the ALJ considered all of the evidence and reasonably evaluated the

combined impact of all of plaintiff's impairments, both severe and non-severe, on his ability to

work.  (Doc. 13 at 2-3).   The Commissioner further alleges there is little evidence that

plaintiff's left knee impairment qualifies as a "severe" impairment as defined under the

regulations.   (*Id*. at 3).   The Commissioner alleges that in any event, plaintiff has not carried his

burden to show how his left knee impairment impacted his functioning during the period of

alleged disability or that his left knee impairment imposes limitations that are inconsistent with

the ALJ's RFC finding.   (*Id*.).

The regulations define a severe impairment or combination of impairments as one that

significantly limits the claimant's physical or mental ability to perform basic work activities.   20

C.F.R. § 416.920(c).   In the physical context, this means a significant limitation on a claimant's

ability to walk, stand, sit, lift, push, pull, reach, carry or handle.   20 C.F.R. § 416.921(b)(1).

The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process.   *Higgs v.*

*Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).   *See also Rogers*, 486 F.3d at 243 n.2.   The claimant

is not required to establish total disability at this level of the sequential evaluation.   Rather, the

severe impairment requirement is a threshold element which the claimant must prove in order to

6

establish disability within the meaning of the Act.  *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984).

An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience."  *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)).   An ALJ's failure to find an impairment to be severe does not constitute reversible error where the ALJ determined that a claimant has at least one other severe impairment and properly considered all of the claimant's impairments, both severe and non-severe, in determining whether the claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ considered plaintiff's left knee impairment at step two of the sequential evaluation process.  (Tr. 15).  The ALJ noted plaintiff's complaints of post-surgical left knee swelling, popping, cracking, and pain which plaintiff alleged reached the level of "5" on a standard analog pain scale.  (*Id*.).   However, the ALJ found that there was no current diagnosis in the available medical records to support plaintiff's claims and that recent physical examinations had disclosed largely normal left knee findings, with the exception of some minor swelling and crepitus.  (*Id*., citing Tr. 423-25- 10/6/11 report by treating physician Dr. Gary Ray, M.D., included left knee findings of mild crepitation, 5/5 strength, and no tenderness; Tr. 583- 10/29/12 treatment note reported findings of normal motion in the left lower extremity, no atrophy or pain to palpation, and negative McMurray's test).   Plaintiff has not pointed to any

medical evidence of record that counters the ALJ's findings and indicates that his left knee condition is a severe impairment in that it interferes with his ability to perform basic work activity.   Plaintiff notes only two reports of abnormal left knee findings during the period of alleged disability: (1) a finding of mild crepitation made by Dr. Ray in October 2011, and (2) Dr. Ray's April 2012 physical examination findings, which again disclosed mild crepitation.[5] (Doc. 10 at 4, citing Tr. 423-25, 479).   Plaintiff has not shown how these findings demonstrate more than a slight abnormality that would impact his ability to perform basic work functions to any extent.   Plaintiff therefore has not carried his burden to demonstrate that his left knee impairment is a severe impairment.   *See Rabbers,* 582 F.3d at 652 (plaintiff bears the burden of proof at the first four steps of the sequential evaluation).   The ALJ did not err by failing to find plaintiff's left knee impairment to be a severe impairment.

Assuming, *arguendo*, the ALJ did err in this regard, the error was harmless.   The ALJ thoroughly reviewed the medical evidence of record in determining the functional limitations imposed by plaintiff's physical impairments, which included severe degenerative joint disease of the right knee and left shoulder and severe degenerative disc disease of the lumbar and cervical spines.   (Tr. 14).   In finding that plaintiff could perform a restricted range of sedentary work, the ALJ considered plaintiff's right knee impairment and physical examination findings related to plaintiff's ability to ambulate.   The ALJ noted that throughout 2011 treating physicians reported negative straight leg raising test results, moderate swelling of the right knee, and

---

[5] Plaintiff alleges that Dr. Ray's April 2012 physical examination disclosed "a mildly stiff gait pattern, mild to moderate tenderness of the left knee, mild swelling of the left knee, and mild crepitation with motion."   (Doc. 10 at 4, citing Tr. 479).   In fact, the only finding Dr. Ray made with respect to the left knee at this time was "mild crepitation with motion of the left knee."   (Tr. 479).   Dr. Ray found that plaintiff "ambulated with a mild to moderate *right* antalgic gait pattern with a cane" and made no findings of left knee tenderness or swelling.   (*Id.*) (emphasis added).

moderate crepitus. (Tr. 20, citing Tr. 267, 4/5/11 office visit for right knee pain- moderate crepitus and pain on medial compression of right knee noted, osteoarthritis diagnosed; Tr. 424, 10/6/11 evaluation- moderate crepitation with motion of the right knee, tenderness, and mild swelling noted; Tr. 433, 8/2/11 emergency room visit for wrist injury- negative bilateral sitting straight leg test, able to stand on heels and toes). The ALJ also considered subsequent physical examination findings which showed that plaintiff walked with a "steady gait" or a "mild stiff gait pattern" without the use of an assistive hand-held device, and he displayed normal strength, sensation and stability of the lower extremities. (Tr. 20, citing Tr. 471, 474, 476). The ALJ stated that treatment notes for a knee arthroscopy follow-up dated December 2012 reflected that plaintiff was "doing well," he had a "little swelling" which was normal, and his "pain [was] gone and [he had] returned to normal activities." (Tr. 20, citing Tr. 583). The ALJ accounted for the functional limitations imposed by plaintiff's severe physical impairments and his diminished ability to ambulate by including the following restrictions in the RFC finding:

> (1) no crouching, crawling, or kneeling; (2) occasional stooping, balancing, and climbing of ramps and stairs; (3) no climbing of ladders, ropes, or scaffolds; (4) no work around hazards such as unprotected heights or dangerous machinery; (5) occasional overhead reaching with the left upper extremity; (6) standing or walking for no more than 30 minutes at a time; (7) limited to jobs in which he would be permitted to use a cane for assistance when ambulating[.]

(Tr. 17).

Plaintiff has not shown that his left knee impairment imposed functional limitations in addition to those assessed by the ALJ nor indicated how inclusion of his left knee impairment as a severe impairment would have changed the ALJ's assessment of his functional limitations. Thus, any error committed by the ALJ in failing to find plaintiff's left knee impairment to be a

severe impairment was harmless.   *Marziarz*, 837 F.2d at 244.

For these reasons, plaintiff's third assignment of error should be overruled.

### 2.   The ALJ's Listing finding (First assignment of error)

Plaintiff alleges as his second assignment of error that the ALJ failed to properly evaluate his impairments under Listing 1.02, "Major dysfunction of a joint[]," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.   (Doc. 10 at 2-3).   Plaintiff alleges that the ALJ summarily found he did not meet or equal Listing 1.02 without considering plaintiff's need to use a hand-held assistive device.   (*Id.*).

Listing 1.02A is at issue here.   An impairment meets Listing 1.02A if it satisfies the following criteria:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).   With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b. . . .

Section 1.00B2b of the Listings defines the "inability to ambulate effectively" as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

Section 1.00B2b also explains the meaning of "to ambulate effectively" as follows:

> (2) To ambulate effectively, individuals must be capable of sustaining a

10

reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.   They must have the ability to travel without companion assistance to and from a place of employment or school.   Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.   The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

To meet Listing 1.02A, the plaintiff must also show that his inability to ambulate lasted or can be expected to last for at least twelve months.   § 1.00B2a.

An impairment is medically equivalent to Listing 1.02A if it is "at least equal in severity and duration to the criteria" of the listed impairment.   *See* 20 C.F.R. § 416.926(a).   Medical equivalence can be found in a number of ways as set forth in the regulations.   20 C.F.R. § 416.926(b).   The ALJ must consider medical equivalence based on all evidence in the record about the claimant's impairments and their effects that is relevant to the equivalency findings. 20 C.F.R. §§ 416.926(b)(4), 416.929(d)(3).   The ALJ will consider whether the claimant's "symptoms, signs and laboratory findings are at least equal in severity to the listed criteria [but] will not substitute [the claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [the] impairment(s) to that of a listed impairment. . . ."   20 C.F.R. § 416.929(d)(3).   If the symptoms, signs and laboratory findings of the claimant's impairments are equivalent in severity to a listed impairment, the claimant will be found disabled.   *Id*.   Otherwise, the impact of the claimant's symptoms on the RFC will be considered.   *Id*.

Here, the ALJ determined that plaintiff's knee impairments did not meet or medically

equal Listing 1.02.   (Tr. 15).   The ALJ found that objective physical testing showed that plaintiff retained the ability to "ambulate effectively" as defined in the Listing.   (*Id*.).   The ALJ specifically noted that plaintiff displayed only "minor gait-related defects" when not using a walker or cane (*Id*., citing Tr. 413, 471), and that he discontinued use of his cane for at least some period of time during the alleged period of disability.   (*Id*., citing Tr. 474, 4/9/12 treatment note- "On physical examination, he ambulated with a mild stiff gait pattern.   He is no longer using his cane.").

Plaintiff argues that the ALJ erred when performing the step three analysis because although the ALJ included a restriction in the RFC limiting him to "jobs in which he would be permitted to use a cane for assistance when ambulating" (Tr. 17), the ALJ found that plaintiff retained the ability to ambulate effectively and did "not consider the effects of the use of an ambulatory aid[.]"   (Doc. 10 at 2-3).   Plaintiff appears to argue that the ALJ's RFC finding limiting him to jobs in which he would be permitted to use a cane is inconsistent with the ALJ's finding that plaintiff retained the ability to "ambulate effectively" as that term is defined in the Listing.

The ALJ did not err in conducting the step three analysis.   There is no evidence that plaintiff has "an extreme limitation of the ability to walk" as he does not require the use "of a hand-held assistive device(s) that limits the functioning of *both upper extremities*."   § 1.00B2b(1) (emphasis added).   Plaintiff has not pointed to any other medical evidence in the record to show that he did not retain the ability to "ambulate effectively" throughout the period of alleged disability, including evidence of the inability to walk without the use of a walker or *two crutches or two canes*; the inability to walk a block at a reasonable pace on rough or uneven

surfaces; the inability to carry out routine ambulatory activities, like shopping and banking; or the inability to climb a few steps at a reasonable pace with the use of a single handrail. § 1.00B2b(2). Although the ALJ limited plaintiff to jobs in which he could use *a cane*, this functional limitation is not inconsistent with the ALJ's finding that plaintiff retained the ability to "ambulate effectively" as that term is defined under the Listing. The ALJ's finding is substantially supported by evidence showing that plaintiff used at most one cane, he did not require the use of a cane during the entire period of alleged disability, and he was otherwise able to ambulate effectively throughout the relevant period.[6]

For these reasons, plaintiff has not shown that his impairments met or medically equaled in severity Listing 1.02 during the period of alleged disability. Plaintiff's first assignment of error should be overruled.

### 3. Weight to the treating psychiatrist (Second assignment of error)

Plaintiff alleges as his second assignment of error that the ALJ erred by failing to give controlling weight to the opinion of his treating psychiatrist, Dr. Irfan Dahar, M.D., and instead crediting the opinions of the non-examining state agency psychologists, Drs. Irma Johnston, Psy.D., and Kristen Haskins, Psy.D. (Doc. 10 at 3-4).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight

---

[6] Plaintiff also notes that the need to use a hand-held assistive device may impact activities such as lifting, carrying, pushing, and pulling. (Doc. 10 at 3, citing Listing 1.00(J)(4)). Plaintiff has not developed this argument to any extent and has therefore waived it. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 416.927(c)(2)-(6) in determining what weight to give the opinion.  *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the length, nature and extent of the treatment relationship and the frequency of examination.  20 C.F.R. § 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion.  20 C.F.R. § 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'"  *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)).  *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).   Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

Here, the ALJ gave "little weight" to an assessment completed by plaintiff's treating mental health providers at Forensic and Mental Health Services, where plaintiff was treated between October 2008 and December 2012.   (Tr. 23, citing Tr. 508-12).   Plaintiff's therapist David Rivers, M.S., L.P.C., prepared and signed the assessment on October 30, 2012, and Dr. Dahar co-signed the assessment on November 10, 2012.   (Tr. 512).   Dr. Dahar and Mr. Rivers assessed plaintiff as having "poor" (defined in the assessment as "seriously limited, but not precluded") ability to relate to co-workers, deal with the public, interact with supervisors, maintain concentration/attention, understand, remember and carry out detailed but not complex job instructions, relate predictably in social situations, and demonstrate reliability.   (Tr. 509-11). They assessed plaintiff as having "fair" ("limited but satisfactory") ability to follow work rules, use judgment, function independently and understand, remember, and carry out simple job instructions.   (Tr. 509-11).   They assessed plaintiff as having no ability to perform complex tasks or deal with work stress.   (Tr. 510-11).

15

The ALJ provided a number of reasons for giving "little" weight to the treating psychiatrist and therapist's opinion.   First, the ALJ found that the progress notes from Forensic and Mental Health Services were not consistent with the assessment in that they did not show plaintiff to be as severely limited as the assessment indicated.   (Tr. 23).   In addition, the ALJ found that the progress notes "reflect a level of sympathy towards the claimant's efforts to obtain disability benefits that may have colored" the treating sources' findings.   (*Id*.).   Further, the ALJ found that although plaintiff was reported to have some "social phobia," he nonetheless retained the ability to relate to others on an occasional basis.   (*Id*.).   Finally, the ALJ found that Dr. Dahar's progress notes indicated that as of December 2012, plaintiff displayed no evidence of psychosis and his mood was sufficiently stable to allow appropriate personal interaction.   (*Id*.).

Plaintiff alleges that the ALJ did not give "good reasons" for giving Dr. Dahar's assessment "little weight."   (Doc. 10 at 3).   Plaintiff asserts that the ALJ's finding that the mental health treatment records reflect a sympathetic bias toward plaintiff's attempts to obtain disability benefits that may have skewed the findings in the assessment lacks any evidentiary basis and is pure conjecture.   (*Id*. at 3-4).   Plaintiff acknowledges that many of both Dr. Dahar and Mr. Rivers' treatment notes mention his efforts to obtain disability benefits, but plaintiff alleges these references are made in a manner that shows the ongoing disability process is difficult and a "major stressor" for him.   (*Id*.).   Plaintiff further alleges that the ALJ's characterization of the psychological treatment notes as showing only "moderate" mental health symptoms is a "serious mischaracterization."   (Doc. 16).

The ALJ gave "good reasons" for discounting the opinion of plaintiff's treating psychiatrist, Dr. Dahar, and his treating therapist, Mr. Rivers.   The ALJ reasonably determined

16

that the severe mental functional limitations assessed in October 2012 were not consistent with the mental health providers' own treatment notes, which showed that plaintiff remained capable of relating to others on an occasional basis.   The ALJ found that the progress notes documented only a moderate level of psychological symptoms and did not portray plaintiff as "seriously agoraphobic or otherwise incapable of working."   (Tr. 21).   The ALJ noted that Dr. Dahar's recent treatment notes supported plaintiff's testimony that his mental health counseling had "helped a lot" with his depression.   (Tr. 22; *see* Tr. 50).   The ALJ specifically relied on Dr. Dahar's treatment note dated December 22, 2012, which reads in its entirety as follows:

> Patient seen on follow up.   He reports to be in a stable condition.   Mood and affect is bright[,] calm and pleasant.   No complains [sic] are offered.   Interacts appropriately.   Attending and participating in his daily activities.   Sleeping well with fair appetite.   Taking [medications] with no side effects.   No mania or psychosis is noted.   No suicidal or homicidal ideas or plans are reported.   Patient was engaged in therapy focused on improving quality of life symptoms management and coping skills.   Patient participated in therapy and agreed to work on his goals.

(Tr. 570).   The ALJ reasonably relied on this evidence to find that Dr. Dahar and Mr. Rivers' assessment of severe mental functional limitations is inconsistent with their own treatment notes showing a moderate degree of impairment.

Plaintiff relies on two treatment notes to show that the ALJ improperly characterized the severity of his symptoms.   (Doc. 16, citing Tr. 516-17, 514-15).   The first is a treatment note dated October 30, 2012, which described plaintiff's mood and affect as "[s]ad, depressed" and "[r]estricted."   (Tr. 516).   The note reports that plaintiff's "significant medical issues" and steady physical decline had "exacerbated his depressed mood."   (*Id.*).   Plaintiff reported that he was "withdrawn and stays in his room and isolates himself.   He has thought about death

17

'because this is not the way I want to keep living my life.'" (*Id*.).  Plaintiff expressed feelings of hopelessness that were apparently related to rejection of his application for disability benefits. (Tr. 517).  The treatment note dated December 20, 2012, described plaintiff's mood and affect as "[v]ery worried, nervous." (Tr. 514).  The report states that aside from "a disappointing knee surgery, client is probably most stressed about the outside possibility that he will still not get his disability benefits awarded at his [January] 16th hearing." (Tr. 514).  The treatment note further reports that plaintiff is "[f]eeling hopeless.  Doesn't have any idea what his next move would be if he is denied again." (Tr. 515).

Contrary to plaintiff's argument, these treatment notes provide no indication that plaintiff suffered from severe or debilitating mental health symptoms at any time during the period of alleged disability.  The treatment notes include few objective or clinical findings.  Further, they attribute plaintiff's psychological symptoms exclusively to his physical ailments and his failure to secure disability benefits.  These treatment notes therefore support the ALJ's finding that the treating mental health providers' progress notes were not consistent with the severe functional limitations they assessed, particularly when considered in conjunction with Dr. Dahar's treatment note dated December 22, 2012, reporting that plaintiff had no mental health complaints and his mood and affect were stable.  (Tr. 570).

The treatment notes cited by plaintiff further support the ALJ's finding that sympathy for plaintiff's efforts to obtain disability benefits may have colored the findings in Dr. Dahar and Mr. Rivers' assessment.  (Tr. 23).  The notes extensively reference plaintiff's physical ailments and his efforts to secure disability benefits.  Mr. Rivers noted in October 2012 that plaintiff "strived to be as accurate as possible to demonstrate to others how bad things are as he, again, tries to

18

secure SS benefits." (Tr. 516). Mr. Rivers stated that plaintiff was stressed due to his physical ailments and his attempts to obtain disability benefits. (*Id*.). Mr. Rivers reported that the therapeutic interventions provided to plaintiff included assuring him "that his reports will be passed on to the right person at his attorney's office." (Tr. 517). After noting in December 2012 that plaintiff was likely most stressed about not being awarded disability benefits at his upcoming hearing and recounting plaintiff's frustrations with the process and his current attorney, Mr. Rivers stated that plaintiff was "leaning heavy on this therapist and agency. Feeling hopeless. Doesn't have any idea what his next move will be if he is denied again." (Tr. 514-15). These statements substantiate the ALJ's finding that the treating mental health providers' assessment may have been impacted by their sympathy toward plaintiff's efforts to obtain disability benefits. The ALJ was entitled to discount the severe mental limitations assessed by Dr. Dahar and Mr. Rivers on this basis.

Instead of crediting the assessment of Dr. Dahar and Mr. Rivers, the ALJ gave "significant weight" to the opinions of nonexamining state agency psychologists Drs. Johnston and Haskins. (Tr. 23, citing Tr. 97-101, 114). In her assessment dated June 10, 2011, Dr. Johnston opined that plaintiff had moderate restrictions in his activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 98). Dr. Johnston assessed the following functional limitations: plaintiff is capable of simple tasks in a static environment characterized by a few changes in routine; he is limited to no more than superficial contact with others; and he is restricted from a rapid work pace. (Tr. 101). Dr. Haskins affirmed Dr. Johnston's assessment as written upon reconsideration in October 2011.

19

(Tr. 111-12, 114).   These medical opinions provide substantial support for the ALJ's RFC finding limiting plaintiff "to performing unskilled, simple, and repetitive tasks; [] occasional contact with coworkers, supervisors, and the public; [] no jobs involving rapid production pace work or strict production quotas; and . . . performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work setting from one day to the next."   (Tr. 17).   *See Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").   *See also* 20 C.F.R. § 416.927(e)(2)(i).

Accordingly, the ALJ gave "good reasons" for giving less "little weight" to Dr. Dahar and Mr. Rivers' assessment and instead adopting the opinions of the state agency reviewing psychologists, Drs. Johnston and Haskins.   Those reasons are substantially supported by the record.   Plaintiff's second assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the docket of the Court.

Date:   10/15/15                              s/Karen L. Litkovitz
                                             Karen L. Litkovitz
                                             United States Magistrate Judge

20

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TROY TRIPLETT,                                    Case No. 1:14-cv-729
      Plaintiff,                                 Dlott, J.
                                                  Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).